JOHN W. HUBER, United States Attorney (#7226)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682
Email: arthur.j.ewenczyk@usdoj.gov
        leslie.a.goemaat@usdoj.gov
        richard.m.rolwing@usdoj.gov
        john.e.sullivan@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:18-CR-365-JNP-BCW |
| Plaintiff, | : | |
| v. | : | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY |
| RACHEL ANN KINGSTON, | : | AND PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C) |
| Defendant. | : | |
| | : | District Judge Jill N. Parrish |
| | | Magistrate Judge Brooke C. Wells |
| | : | |

---

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and entering into this agreement:

1.      As part of this agreement with the United States of America ("United States"), I intend to plead guilty to Counts 1, 23, 40, 41, and 45 of the Second Superseding Indictment, ECF 135. My attorney has explained the nature of the charges against me, and I have had an

opportunity to discuss the nature of the charges with my attorney.  I understand the charges and what the United States is required to prove in order to convict me.

(a) The elements of Count 1, charging Conspiracy to Commit Mail Fraud, are:

    i.  First: two or more persons agreed to commit mail fraud in violation of 18 U.S.C. § 1341, the elements of which are:

        1.  First: the defendant devised or intended to devise a scheme to defraud, as alleged in the indictment;

        2.  Second: the defendant acted with specific intent to defraud;

        3.  Third: the defendant mailed something, or caused another person to mail something, through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme;

        4.  Fourth: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

    ii.  Second: the defendant knew the essential objective of the conspiracy;

    iii.  Third: the defendant knowingly and voluntarily involved herself in the conspiracy; and

    iv.  Fourth: there was interdependence among the members of the conspiracy.

(b) The elements of Count 23, charging Conspiracy to Commit Concealment Money Laundering, are:

    i.  First: two or more persons agreed to commit concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the elements of which are:

        1.  First: the defendant conducted or attempted to conduct a financial transaction;

        2.  Second: the financial transaction involved the proceeds of the mail fraud scheme alleged in Count 1 of the indictment;

        3.  Third: the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

        4.  Fourth: the defendant conducted or attempted to conduct the financial transaction knowing that it was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds

of unlawful activity.

    ii.  Second: the defendant knew the essential objective of the conspiracy;

    iii.  Third: the defendant knowingly and voluntarily involved himself or herself in the conspiracy; and

    iv.  Fourth: there was interdependence among the members of the conspiracy, that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

(c) The elements of Counts 40 and 41, charging a violation of 18 U.S.C. § 1957, Expenditure Money Laundering, are:

    i.  First, the defendant engaged or attempted to engage in a monetary transaction;

    ii.  Second, that defendant knew the transaction involved criminally derived property;

    iii.  Third, the property had a value greater than $10,000;

    iv.  Fourth, the property was derived from the mail fraud scheme alleged in Count 1 of the indictment;

    v.  Fifth, the transaction occurred in the United States.

(d) The elements of Counts 45, charging a violation of 18 U.S.C. § 1512(c)(1), Obstruction by Concealing and Destroying Records and Objects, are:

    i.  First, the defendant altered, destroyed, mutilated, or concealed a record, document, or other object;

    ii.  Second, the defendant acted corruptly; and

    iii.  Third, the defendant acted with the intent to impair the record, document, or other object's integrity or availability for use in an official proceeding.

2.    I know that the maximum possible penalty provided by law for Counts 1, 23, 40, 41, and 45 are the following.

(a) I know that the maximum possible penalty for Count 1 of the Second Superseding Indictment, a violation of 18 U.S.C. § 1349, is a term of imprisonment of 20 years, a fine of $250,000 or twice the gross gain or loss, a term of supervised release of 3 years, and any applicable forfeiture. I understand that if I violate a term or condition of supervised release, I can be returned to prison for the length of time provided in 18 U.S.C. § 3583(e)(3).

3

(b) I know that the maximum possible penalty provided by law for Count 23 of the Second Superseding Indictment, a violation of 18 U.S.C. § 1956(h), is a term of imprisonment of 20 years, a fine of $500,000 or twice the value of the property involved, a term of supervised release of 3 years, and any applicable forfeiture.

(c) I know that the maximum possible penalty provided by law for Counts 40 and 41 of the Second Superseding Indictment, violations of 18 U.S.C. § 1957, is a term of imprisonment of 10 years, a fine of $250,000, or twice the value of the property involved, a term of supervised releases of 3 years, and any applicable forfeiture.

(d) I know that the maximum possible penalty provided by law for Count 45, charging a violation of 18 U.S.C. § 1512(c)(1), is a term of imprisonment of 20 years, a fine of $500,000, and a term of supervised release of 3 years.

    a.   Additionally, I know the Court is required to impose an assessment in the amount of $100 for each offense of conviction, pursuant to 18 U.S.C. § 3013. Furthermore, restitution to the victim of my offenses shall be ordered pursuant to 18 U.S.C. § 3663A.

    b.  I understand that, if I am not a United States citizen, I may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    3.    I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 3553(a), and that the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence. I have discussed these procedures with my attorney. I also know that the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs. However, because my plea of guilty is being entered pursuant to Rule 11(c)(1)(C), as explained below, I know that I will be able to withdraw my plea if the Court does not accept the terms of this agreement.

    4.    I stipulate to the following United States Sentencing Guidelines calculation, and understand that this stipulation is not binding on the Court:

| | |
|---|---|
| Base offense level per § 2S1.1(a)(1) and § 2B1.1(a)(1) and § 2B1.1(b)(1)(P) (intended fraud loss more than $550 million): | 37 |
| Two-level enhancement for conviction under 18 U.S.C. § 1956 pursuant to § 2S1.1(b)(2)(B): | +2 |
| Two-level enhancement for sophisticated means per § 2B1.1(b)(10)(C): | +2 |
| Two-level enhancement for obstruction of justice enhancement per § 3C1.1: | +2 |

I reserve the right to argue as to acceptance of responsibility per § 3E1.1 and role in the offense per § 3B1.1.

    5.    I know that I can be represented by an attorney at every stage of the proceeding, and I know that if I cannot afford an attorney, one will be appointed to represent me.

6.      I know that I have a right to plead "Not Guilty" or maintain my earlier plea of "Not Guilty" and can have a trial on the charges against me.

7.      I know that I have a right to a trial by jury, and I know that if I stand trial by a jury:

a.   I have a right to the assistance of counsel at every stage of the proceeding.

b.   I have a right to see and observe the witnesses who testify against me.

c.   My attorney can cross-examine all witnesses who testify against me.

d.   I can call witnesses to testify at trial, and I can obtain subpoenas to require the attendance and testimony of those witnesses. If I cannot afford to pay for the appearance of a witness and mileage fees, the United States will pay them.

e.   I cannot be forced to incriminate myself, and I do not have to testify at any trial.

f.   If I do not want to testify, the jury will be told that no inference adverse to me may be drawn from my election not to testify.

g.   The United States must prove each and every element of the offense charged against me beyond a reasonable doubt.

h.   It requires a unanimous verdict of a jury to convict me.

i.   If I were to be convicted, I could appeal, and if I could not afford to appeal, the United States would pay the costs of the appeal, including the services of appointed counsel.

8.      If I plead guilty, I will not have a trial of any kind.

9.      I know that 18 U.S.C. § 3742(c)(1) sets forth the circumstances under which I may appeal my sentence. However, fully understanding my right to appeal my sentence, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily and expressly waive my right to appeal as set forth in paragraph 12 below.

10.      I know that under a plea of guilty the judge may ask me questions under oath about the offense. The questions, if asked on the record and in the presence of counsel, must be answered truthfully and, if I give false answers, I can be prosecuted for perjury.

11.      I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea:

At all times relevant to the charges in the indictment I was employed at Washakie Renewable Energy ("WRE") or United Fuels Supply ("UFS"), which was its sister company. At all relevant times, I worked in roles and on tasks assigned by Jacob Kingston, including working as a Project Manager. I was not involved in or privy to every aspect of WRE/UFS in my role as

Project Manager. I was not present as a project manager for the entirety of the period alleged in the Second Superseding Indictment, in part because I was removed from managing projects for a time by Jacob Kingston due to health concerns and because I realized we were unlawfully claiming false tax credits. At all times during my employment at WRE/UFS and at all relevant times during the indictment when I was performing any task relevant to WRE/UFS I did so at the direction of and with the full knowledge of at least Jacob Kingston. At times, I also coordinated with Isaiah Kingston and Sally Kingston, who also worked for WRE/UFS. I agreed with Jacob Kingston, Isaiah Kingston, and Sally Kingston, and others, to prepare fake paperwork and cycle money to support fraudulent claims for tax refunds.

In my role as Project Manager at WRE/UFS, I was tasked with working with customers, partners, and toll processors of WRE/UFS. I was responsible for creating invoices pertaining to various projects as needed. I was also responsible for sending wires to vendors and others.

In the spring of 2011, I met with Frank DiBenedetto and Michelle Helms from the company Grease Depot in Clearwater, Florida. I managed a project with them as a toll processor for WRE/UFS. I was at the processing facility of Grease Depot and saw their final product which was a solid–not a liquid. I knew that their product was a solid and was waste and that they were paying to burn at a waste to energy facility. I assisted in the creation of back-dated paperwork for Grease Depot including toll processing agreements, invoices and other documents for the years 2009, 2010, and 2011. I knew that WRE/UFS did not have any business dealings with Grease Depot, Michelle Helms, or Frank Dibenedetto during the years 2009, 2010, or early 2011. I knew that Grease Depot could not have toll processed product of any kind on behalf of WRE/UFS during 2009, 2010, or early 2011. I also created false and backdated paperwork falsely claiming that this solid was "heating oil," "Alternative Fuel 100," "flex fuel" or "flex fuel plus diesel fuel additive" which was "toll processed" by Grease Depot on behalf of Washakie, but was in fact just garbage. I knew that WRE was claiming tax credits on this material. Jacob Kingston and Isaiah Kingston also knew that this product was garbage.

During my employment at WRE/UFS, I worked on a project for purchasing Viscon. This Viscon project was Levon Termendzhyan's idea. Jacob Kingston told me that this project was just a way for Termendzhyan to get his money from WRE/UFS. The price of the Viscon product was inflated and overpriced. The invoices were meant to make it appear as though there were a legitimate business reason for WRE/UFS to be sending money to Termendzhyan's entity. In fact, the funds sent over were Termendzhyan's share of the proceeds from the filing of false claims for fuel tax credits. I also know that Levon Termendzhyan brought a lawsuit related to this Viscon project, to ensure he received his part of the tax credit.

I engaged in a number of projects with Deryl Leon of SCM/Catan, and I knew some of them were fraudulent, including the creation of fake invoices fraudulently claiming that WRE sold B99 to SCM and bought B100 from Catan. I created fake invoices to create documentation to back up the claims for the tax credit. I also sent wires to Leon, to or from his companies SCM and Catan, to create the appearance that true business transactions were occurring; Isaiah Kingston would verify these wires because two people were required to send out the wire transfers. I knew that the money being wired between SCM and Catan involved funds received from filing false tax claims. I worked on these false invoices with the help of Leon and at the

direction of Jacob Kingston. I knew that the numbers on these invoices were all false and fabricated. I knew that there was not real biodiesel being created, blended, or sold, and so I knew we did not qualify for the tax credits we were claiming. I agreed with Jacob Kingston and Isaiah Kingston to cycle money that I knew to be from fraudulent tax refunds in order to create the appearance that fuel was being bought and sold.

While working on the Leon project I would not send the information through email. Instead, the false invoices were kept on a thumb drive or faxed. On one occasion, I visited Leon in Miami, Florida and hand delivered a thumb drive with the false invoices because I knew that this project was illegal and I wanted to make sure it could not be intercepted. This project with Leon lasted at least several months.

In February 2016, I was aware that P.K. at WRE received a phone call from an individual who used the pseudonym "Mr. Green" and was told that WRE/UFS was going to be "raided" soon. After this phone call was received, Jacob Kingston decided that hard drives would be removed. Jacob Kingston also directed me to remove documents from my office and that of his assistant. I personally took files from the cabinets in my office and a neighboring office of an ex-employee, and placed them into several boxes. I took the boxes out of the WRE/UFS offices and put them in my car and took them home. These files which were removed prior to any law enforcement warrants, were eventually taken up to the WRE plant in Plymouth, Utah. I know that the hard drive in my computer was changed; Jacob Kingston told me it was best that my hard drive was removed. These files, which were removed prior to any law enforcement warrants, were eventually taken up to the WRE plant in Plymouth, Utah.

I knew that an individual, code-named "Commissioner Gordon," who I believed to be a high level DOJ official, was going to help WRE/UFS with its legal troubles. I recall communicating with the person I thought was Commissioner Gordon through burner phones that Jacob Kingston directed me to buy and use.

Additionally, during my employment at WRE/UFS, I created multiple wire transfer requests to accounts in Turkey at the direction of Jacob Kingston, and verified by Isaiah Kingston. Specifically, I participated in creating a December 14, 2015 $2,100,000 wire from Washakie Renewable Energy to Jacob Kingston's account at Garanti Bank, Turkey and a December 28, 2015, $6,900,000 wire from Washakie Renewable Energy to Jacob Kingston's account at Garanti Bank, Turkey, as charged in Counts 40 and 41. I knew that the money used for these wires involved funds received from filing false claims for fuel tax credits.

12.     The only terms and conditions pertaining to this plea agreement between me and the United States are as follows:

a.   **Guilty Plea.**  I will plead guilty to Counts 1, 23, 40, 41, and 45 are of the Second Superseding Indictment.

b.   **Stipulated Sentence.**  Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the sentence imposed by the Court will be **no more than 15 years (180 months) imprisonment.**

(1)     I understand that this agreement, including my plea, the agreed upon maximum sentence, and all other terms referenced herein, are subject to the approval of, and acceptance by the Court. I further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and I agree to fully cooperate in the preparation of the Presentence Report.

(2)     If, after receiving all relevant information, the Court rejects the plea agreement and determines that a sentence higher than the agreed upon sentence of no more than 15 years (180 months) will be imposed, I will have the right to withdraw the plea of guilty and the terms of this agreement will become null and void. Likewise, if the Court rejects the plea agreement, I understand that the United States will have the right to move to vacate this agreement, and all terms of this agreement will become null and void.

c.  **Relevant Conduct.** I understand and agree that the Presentence Report may include descriptions of conduct I engaged in which either was not charged against me, will not be pleaded to by me, or both. I understand and agree that the Court will take these facts into consideration in determining the reasonableness of the stipulated sentence. I agree and stipulate that the intended loss of my conduct was $1,166,792,650 and that the actual loss caused by my conduct was $511,842,773.

d.  **Appeal Waiver.**

(1)     Fully understanding my limited right to appeal my sentence, as explained above in paragraph , and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me, except that I do not waive the right to appeal as set forth in 18 U.S.C. § 3742(c)(1), which states that I may not file a notice of appeal unless the sentence imposed is greater than the sentence set forth in this agreement.

(2)     I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

(3)     I understand that this waiver of my appeal and collateral review rights concerning my sentence shall not affect the United States' right to appeal my sentence pursuant to 18 U.S.C. § 3742(c)(2) and § 3742(b)(1) and (2).

(4)     I further understand and agree that the word "sentence" appearing throughout this waiver provision is being used broadly and applies to all aspects of the Court's sentencing authority, including, but not limited to: (1) sentencing determinations; (2) the imposition of imprisonment, fines, supervised release, probation, and any specific terms and conditions thereof; and (3) any orders of restitution.

e.  **Presentence Report and Financial Information.** I agree to provide truthful and complete information, including financial information, as requested by the probation office for the preparation of my presentence report and for determination of the conditions of my

supervised release. I also consent to allowing the United States Attorney's Office to run a credit check on me. I consent to being placed on the Treasury Offset Program and State Finder.

      f. **Restitution.**

      (1)    I agree that I am subject to mandatory restitution because my case falls within the provisions of 18 U.S.C. § 3663A(a)(1) and (c)(1) based on Count 1 of the Second Superseding Indictment, to which I am pleading guilty. My attorney has explained what mandatory restitution means.

      (2)    Under 18 U.S.C. § 3663A(a)(3), I agree to pay restitution to the Internal Revenue Service, in the amount of **$511,842,773**, due at the time of sentencing. I agree that this total amount of restitution reflected in this agreement results from my fraudulent conduct. I agree to pay this specific restitution, joint and several with any codefendants, and agree that this amount should not be reduced or increased through apportionment of liability under 18 U.S.C. § 3664(h).

      (3)    I agree to the following additional provisions regarding restitution:

        i.  I agree that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, I agree that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). I do not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor my timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

       ii.  I am entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. I understand and agree that the plea agreement does not resolve my civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from me relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise my obligation to pay any remaining civil tax liability. I authorize release of information to the IRS for purposes of making the civil tax and restitution based assessments.

       iii.  I understands that I am not entitled to credit with the IRS for any payment until the payment is received by the IRS.

    iv.  If full payment cannot be made immediately, I agree to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. I also agree to provide the above-described information to the probation office.

    v.  If I make a payment of the restitution agreed to above prior to sentencing, the payment will be applied as a credit against the restitution ordered.

(4)    I understand that the amount of restitution and the schedule of payments will be determined as a part of the sentencing proceedings in accordance with the provisions of 18 U.S.C. § 3664. I agree to pay all restitution as ordered by the Court. I agree that the payment and enforcement of my restitution order is governed by 18 U.S.C. § 3664, and my lawyer has explained the consequences of an order of restitution.

(5)    I understand and agree that payment of any restitution owed, pursuant to the schedule set by the Court at sentencing, should be a condition of any term of probation or supervised release imposed upon me. I know that if I fail to pay restitution as ordered, the failure can be considered a violation of probation or supervised release and, pursuant to 18 U.S.C. § 3614, the Court can resentence me to any sentence which might originally have been imposed in my case.

(6)    I agree to the following provisions regarding payment of restitution:

    i.  I agree to send all payments made pursuant to the court's restitution order to the Clerk of the Court at the following address:

Clerk of the Court
351 S W Temple
Salt Lake City, UT 84101

    ii.  With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, I will provide the following information:

        1.  My name and Social Security number;

        2.  The District Court and the docket number assigned to this case;

        3.  Tax year(s) or period(s) for which restitution has been ordered; and

        4.  A statement that the payment is being submitted pursuant to the District Court's restitution order.

    iii.  I agree to include a request that the Clerk of the Court send the information, along with my payments, to the IRS address below:

IRS – RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

iv.  I also agree to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

IRS – RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

g.  **Waiver of Interest.**  The United States agrees to recommend that the Court waive interest for fines and restitution assessed against me.

h.  **Forfeiture.**

(1)  I agree to forfeit my interest in all property acquired from or traceable to my offenses and all property that was used to facilitate my offenses, including, but not limited to, the following specific property:

The assets listed in Exhibit A.

(2)  I have no information about the money transferred by Washakie or UFS to Order-related entities including the purpose or legitimacy of the transfers. I will not contest the United States' tracing of proceeds of the mail fraud scheme and/or proceeds involved in the money laundering schemes from Washakie or UFS to the properties listed in Exhibit A.

(3)  I agree to a forfeiture MONEY JUDGMENT of $511,842,773. This amount is equal to the value of any property, real or personal, constituting or derived from proceeds traceable to the mail fraud conspiracy and not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).[1] Additionally, I agree to a forfeiture MONEY JUDGMENT of at least $511,842,773, which is equal to the value of all property involved in the money laundering conspiracy and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s). The money judgments will run concurrently.

(4)  I acknowledge that to the extent proceeds of the mail fraud scheme charged in count one or property involved in the money laundering counts in this agreement can be traced to the property covered by this agreement, my interest in that property is subject to

---

[1] The government will move to partially satisfy the forfeiture money judgment to the extent of the value it obtains, after deducting costs, from successfully forfeiting specific assets.

forfeiture because it represents the proceeds of illegal conduct or helped facilitate illegal conduct.

(5)      I agree that all such property may be forfeited in either an administrative, civil and/or criminal judicial proceeding. I agree that I will not make a claim to the property or otherwise oppose forfeiture in any such proceedings, and I will not help anyone else do so. If I have already made such a claim, I hereby withdraw it. I further agree that I will sign any necessary documents to ensure that clear title to the forfeited assets passes to the United States, and that I will testify truthfully in any judicial forfeiture proceeding. In addition, I agree that I will not make any claim to property forfeited by any other defendant in this case.

(6)      I hereby waive any claims I may have against the United States regarding the seizure and forfeiture of the property covered by this agreement.

(7)      I hereby waive the requirements regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

(8)      I hereby waive any constitutional or statutory challenges to the forfeiture covered by this agreement, including that the forfeiture is an excessive fine or punishment.

(9)      I agree to repatriate to the jurisdiction of the District of Utah any property listed in the Second Superseding Indictment (including the funds described in paragraph 34(e)), any property listed in Exhibit A that is outside the court's jurisdiction, and any other property that is connected to, the proceeds of, or involved in the charges in the indictment. For real property that is connected to, the proceeds of, or involved in the charges in the indictment, but is outside the jurisdiction of the court, I agree to identify to the United States Attorney's Office such properties within thirty days of signing this agreement; to sell those properties within six months of signing this agreement; and to repatriate the proceeds from the sale of such properties within ten days of receipt along with an accounting from a title company or its equivalent that details the disposition of funds.

(10)    If in its sole discretion the U.S. Attorney's Office determines that the defendant meets the criteria for restoration under Department of Justice and Money Laundering and Asset Recovery Section (MLARS) policy, it agrees to recommend to MLARS through the restoration process that payments the defendant makes on the forfeiture money judgment be applied to reduce the amount the defendant owes on the restitution order. The defendant further understands that MLARS retains the ultimate discretion whether to grant or deny any restoration request. Upon approval of the restoration request, payments made on the forfeiture money judgment will also satisfy the restitution order to the extent of such payments. The defendant may make payments on the forfeiture money judgment by cashier's check or money order to "United States Marshals Service," referencing the case number, and mailed to: United States Marshals Service, ATTN: Dorothy Akins, 351 S. West Temple, Suite 4.200, Salt Lake City, UT 84101-1908.

13.     I understand and agree that this plea agreement is solely between me and the United States Attorney for the District of Utah, and Department of Justice, Tax Division, and

does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

14.     I understand that I have a right to ask the Court any questions I wish to ask concerning my rights about these proceedings and the plea.

*     *     *     *

I make the following representations to the Court:

1.     I am **64** years of age.  My education consists of a high school education.  I can read and understand English.

2.     This Statement in Advance contains all terms of the agreement between me and the United States; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms.  I understand the United States and I cannot have terms of this plea agreement that are not disclosed to the Court.

3.     No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.

4.     Neither my attorney nor the United States has promised me that I would receive probation or any other form of leniency because of my plea.

5.     I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.

6.     I am satisfied with my lawyer.

7.     My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea.  I was not under the influence of any drugs, medication, or intoxicants when I made the decision to enter the plea, and I am not now under the influence of any drugs, medication, or intoxicants.

8.     I have no mental reservations concerning the plea.

9.     I understand and agree to all of the above.  I know that I am free to change or delete anything contained in this statement.  I do not wish to make changes to this agreement because I agree with the terms and all of the statements are correct.

DATED this **18th** day of July, 2019

Rachel Ann Kingston
Defendant

I certify that I have discussed this plea agreement with the defendant, that I have fully explained her rights to her, and that I have assisted her in completing this written agreement.  I believe that she is knowingly and voluntarily entering the plea with full knowledge of her legal rights and that there is a factual basis for the plea.

DATED this **18th** day of July, 2019.

Cara Tangaro
Attorney for Defendant

I represent that all terms of the plea agreement between the defendant and the United States have been, or will be at the plea hearing, disclosed to the Court, and there are no undisclosed agreements between the defendant and the United States.

DATED this **8th** day of July, 2019.

JOHN W. HUBER
United States Attorney

Richard M. Rolwing
Leslie A. Goemaat
Arthur J. Ewenczyk
Special Assistant United States Attorneys
John E. Sullivan
Senior Litigation Counsel

14

**Exhibit A**
*Property the Defendant Agrees to Forfeit*

a.  The physical plant once known as Washakie Renewable Energy, LLC, located at 7550 W 24000 N Plymouth, Utah, and all the equipment installed therein, and affixed thereto.

b.  Real property located at:

1.  2072 East Creek Road, Sandy, Utah 84190 United States
2.  16572 Somerset Ln., Huntington Beach, CA 92649
3.  4400 S. 700 E., Salt Lake City, UT 84107
4.  4829 S. 3960 W., Taylorsville, UT 84129
5.  4271 S. 1300 E., Salt Lake City, UT 84124
6.  1415 W. Crystal Ave., West Valley City, UT 84119  (APN 15-22-476-016)
7.  13 Acres FM 511 @ FM, Brownsville, TX 78521
8.  24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #07-090-0002)
9.  24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #07-037-0001)
10. 24050 N. 600 W. Plymouth, UT 84330Box Elder County, Utah 84330 United States (Parcel #08-041-0004)
11. 24050 N. 600 W Plymouth Box Elder County, Utah 84330 United States (Parcel #08-041-0019)
12. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 8433 United States (Parcel #08-041-0020)
13. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-041-0025)
14. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-041-0026)
15. 24050 N. 600 W. Plymouth, UT 84330Box Elder County, Utah 84330 United States (Parcel 08-041-0027)
16. 24050 N. 600 W. Plymouth Box Elder County, Utah 84330 United States (APN 08-041-0028)
17. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel 08-42-0018)
18. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-045-0005)
19. 24050 N. 600 W. Plymouth, UT 84330 Box Elder County, Utah 84330 United States (Parcel #08-052-0008)
20. 2973 W. Mackay Meadows Pl., Salt Lake City, UT 84119
21. 2338 S. 1360 W. Salt Lake City, UT 84119
22. Real property in the Corozal free-zone area of Belize
23. 1305 W. Main, Mesa, AZ 85201 (APN: 134-31-005-F4)
24. 3179 S. Village Pine Cove, West Valley City, UT 84128
25. 8228 S. 2700 W., West Jordan, UT 84088
26. 7504 S. 2200 W., West Jordan, UT 84084

27. 1516 W. Culpepper Cir., Taylorsville, UT 84123
28. Deep Creek Ranch Ibapah, UT 84034 (APN: 07-097-0-0004)
29. 1401 W. Crystal Ave., West Valley City, UT 84119 (APN: 15-22-476-016)
30. 3365 S. Diamond Ridge Cir., West Valley City, UT 84128 (14-27-351-036)
31. 6710 S. 2700 W., West Jordan, UT 84084
32. 1995 W. Alexander St., Salt Lake City, UT 84119
33. 3062 E. Ensign Park Dr., Magna, UT 84044
34. 13907 S. 2200 W., Bluffdale, UT 84065
35. 3475 S. Centennial Rd., Magna, UT 84044
36. 780 N 1100 W., West Bountiful, UT 84087
37. 1533 W. Dowry Ct., Taylorsville, UT 84123 (APN: 21-15-409-040)
38. 5090 S. 1130 W., Taylorsville, UT 84123 (APN: 21-11-303-008)
39. 6938 W. Hunter Valley Dr., West Valley City, UT 84128 (APN: 14-27-330-010)
40. Vacant Land, Woods Cross, UT 84087 (APN: 06-079-0083)
41. APN: 15-25-230-024 Salt Lake City, UT
42. 2928 S. 7200 W., Magna, UT 84044
43. 1896 W. Seargant Dr., Salt Lake City, UT 84116 (APN: 08-27-108-008-0000
44. 445 E. Wilson Ave., Salt Lake City, UT 84115
45. 850 W. 600 N., West Bountiful, UT 84087
46. 1672 W. Southgate Ave., West Valley City, UT 84119 (APN: 15-22-454-021)
47. 7292 S. Redwood Rd., West Jordan, UT 84084
48. 22555 N Frontage Rd, Portage, UT 84331 (APN: 08-052-0012)
49. Box Elder County, Utah APN: 08-052-0014
50. Box Elder County, Utah APN: 08-052-0006
51. Box Elder County, Utah APN: 08-052-0005
52. Box Elder County, Utah APN: 08-052-0004
53. Box Elder County, Utah APN: 08-044-0004

c. The following vehicles:

   i.    2010 Bugatti Veyron, Vehicle Identification Number ("VIN")
         VF9SC2C23AM795205;
   ii.   2015 Lamborghini Aventador, VIN: ZHWUR1ZD2FLA03759;
   iii.  2011 Cadillac Escalade, VIN: 1GYS4CEF8BR217610;
   iv.   2013 Lincoln MKX, VIN: 2LMDJ8JK8DBL49070;
   v.    2013 Audi Q7, VIN: WA1LMAFEXDD009274;

d. Proceeds from the sale of the following vehicles:

   1. 2008 Lamborghini Murcielago, VIN: ZHWBU37S78LA02905
   2. 2007 Ferrari 599, VIN: ZFFFC60A070156760
   3. Six Kenworth T660 trucks with the following VINs: 1XKAD49X9EJ418286;
      1XKAD49X9EJ418287; 1XKAD49X9EJ418406; 1XKAD49X9EJ418407;
      1XKAD49X9EJ417967; 1XKAD49X9EJ423229.

e. Property purchased in or traceable to the following transactions:

| Date | Title Company | Bank Account | Amount |
|---|---|---|---|
| 08/23/2013 | InWest Title Services | Fidelity 1212 | $377,131.52 |
| 12/09/2013 | InWest Title Services | BofA 9516 | $164,000.00 |
| 03/06/2014 | Sterling Drive | Fidelity 1212 | $523,678.42 |
| 03/07/2014 | Service Link LLC | USB 0221 | $332,000.00 |
| 03/14/2014 | Key Bank | USB 0221 | $284,000.00 |
| 11/17/2014 | American Secure Title | WRE 4874 | $407,772.92 |
| 3/20/2015 | American Secure Title | WRE 5016 | $417,393.97 |
| 10/16/2015 | American Secure Title | USB 0221 | $326,427.56 |
| 04/15/2015 | American Secure Title | WRE 5016 | $1,183,696.38 |

f.  Any and all assets purchased or investments made using proceeds, whether through Washakie Renewable Energy, United Fuel Supply, SBK Holdings USA, Inc,, or SBK Holding AS (Turkey), or Speedy Lion Renewable Fuel Investments, LLC, and any gains from those investments, including the following:

   i.  Mobstar, LTD (Ireland)
   ii.  Vision Financial Markets, LLC
  iii.  Set-App Technologies, Turkey including the following real properties:

| City | Town | Neighborhood | Ada No. | Parcel No. | M² | Owner |
|---|---|---|---|---|---|---|
| Istanbul | Besiktas | Ortakoy | 38 | 19 | 287,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 172 | 18 | 80,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 5 | 198,00 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 6 | 225,75 | Setap |
| Istanbul | Besiktas | Kuru Cesme | 1283 | 7 | 276,25 | Setap |

  iv.  Biopharma, Turkey
   v.  Isanne, SARL
  vi.  Komak Isi Yalitim Sistamleri Sanayi (Turkey)
 vii.  Doga Dogan
viii.  Mega Varlik Yonetim A.S.
  ix.  Accounts at Merrill Lynch

g.  All of the share interests and other equity of Beck's Sanitation, Inc., a Utah corporation, that Washakie Renewable Energy, LLC (signatory Jacob Kingston) purchased from Dan Magana in about July 2015.

h.  The outstanding balance of the loan owed by Zubair Kazi to SBK Holdings USA, Inc.; and

   1.  Any and all interest payments made or owed by Zubair Kazi.
   2.  Any and all principal payments made or owed by Zubair Kazi.